[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On July 25, 2001, the plaintiff husband filed a complaint requesting "a dissolution of marriage; joint legal custody of the minor child; an equitable division and assignment of the parties' personal property and debts; and an assignment of the title to the parties' real property pursuant to Section 46b-81 of the Connecticut General Statutes." On October 6, 2000, the defendant wife filed an answer admitting paragraphs 1 through 6 of the plaintiff's complaint and filed a cross-complaint requesting "a dissolution of marriage; joint legal custody of the minor child; child support for the minor child; a fair and equitable property settlement; and such other relief as the court in justice and in equity deems to be fair and equitable."
On November 20, 2001, the parties agreed and entered into a custody and visitation stipulation. On said day, the court (Dubay, J.) accepted and approved said stipulation and entered orders consistent therewith.
The parties and counsel appeared at trial on November 20, 2001 and November 29, 2001 and presented testimony and exhibits. On November 29, 2001. the defendant filed a motion for contempt dated November 27, 2001 against the plaintiff regarding his transfer of the ownership an automobile, purchase of a new automobile and incurring unreasonable debt.
The court, after hearing and reviewing the evidence finds the following facts. The defendant wife, whose birth name was Karen M. Gallo, married the plaintiff husband in Meriden, Connecticut on August 14, 1982. Both parties have resided continuously in the state of Connecticut more than one year before the filing of their respective complaints. All statutory stays have expired and this court has jurisdiction. The parties adopted one minor child during their marriage, namely, Brian Michael Sujecki, born November 6, 1990, who is found to be issue of the marriage. No other minor children have been adopted or born to the defendant since the date of the marriage. The court further finds that no state or municipal agency is contributing to the support of the parties or their child.
The plaintiff is fifty years old and takes medication, including Prozac, for the treatment of various health problems such as depression and obsessive compulsive disorder, high blood pressure and an ulcer. Said health issues do not interfere with plaintiff's employment or normal daily activities. The plaintiff has his Masters Degree and is primarily CT Page 16940 employed by the Town of Stonington Board of Education as a teacher. In addition to his basic employment contract, the plaintiff has agreements with the Board of Education to act as co-athletic director and soccer coach. The plaintiff's total gross compensation is $64,763.27 per annum.
The defendant wife is forty-six years old, has obtained her Bachelors Degree and 6th year equivalent certification. The defendant is employed by the Town of Stonington Board of Education as a special education teacher. Her annual compensation is $59,020.00. Additionally, the defendant participates on a volunteer basis in the "Homework Club" where she receives additional average weekly income of $54.00, when school is in session. Her total annual income is just shy of $61,000.00 per annum. In 1987, she was diagnosed with uterine and ovarian cancer. Said health condition required surgery and follow-up treatment which included internal radiation resulting in a build up of scar tissue that causes pain. She presents as a healthy individual and in no apparent distress.
The parties first met in 1978 at their place of employment while the plaintiff was still married to his first wife. In November of 1981, the parties became engaged. The plaintiff had premarital assets namely, $16,000.00 in cash, which was used as a down payment towards the purchase of the parties' first residence located at 16 Soundview Drive, Stonington, Connecticut, and his teachers retirement fund which were greater than the premarital assets of the defendant. In August of 1991, the parties purchased property on High Ridge Drive in Pawcatuck on which they had their current marital residence built for them. This was accomplished by refinancing the Soundview Drive property as well as obtaining a bank mortgage in the amount of $100,000.00. The Soundview property was sold in April, 2000 and the proceeds went toward paying accumulated credit card debt as well as the purchase of the Ford Explorer currently in possession of the defendant.
Problems in communication seem to arise nearly from the outset of the marriage. The defendant requested of the plaintiff early on that they engage in marriage counseling. However, the plaintiff refused. Following the defendant's surgery in 1987, intimacy became somewhat painful to the defendant which led to the plaintiff feeling that he was being neglected by his wife. The plaintiff started counseling in connection with his obsessive compulsive disorder in 1994, but declined the defendant's request to engage in marital counseling as well at that time. Sexual relations between the parties became even more infrequent following a possible drunken indiscretion on the part of the part of the plaintiff on New Year's Eve in 1994 which caused the plaintiff to fear that he had contracted a sexually transmitted disease. By January of 2000, the plaintiff was extremely unhappy in the marriage and so informed the defendant. The home life that had been previously tense then became CT Page 16941 impossible. The defendant again suggested to the plaintiff that they engage in marital counseling. However, the plaintiff was not interested. The plaintiff had at this time started to become involved emotionally with a recently widowed friend of the parties. This emotional attachment ultimately led to an extramarital affair in the spring and summer of 2000, around the time this action was being filed.
The court concludes that the allegations of the complaint are proven and are true. The marriage is broken down irretrievably. The court will dissolve the marriage based upon that irretrievable breakdown. The court, in entering its other orders, considers the provisions of C.G.S. §§ 46b-40, 46b-56, 46b-56a, 46b-58, 46b-63, 46b-66, 46b-66a, 46b-81,46b-82 and other statutes relevant to the issues presented.
 Orders
1. The plaintiff and defendant shall have joint legal custody of the minor child with the defendant having primary physical and residential custody.
2. The plaintiff shall be entitled to the following visitation:
a. Each Wednesday from 4:30 p.m. until 7:30 p.m.
b. Each Thanksgiving day every year.
 c. Christmas Eve from 4:00 p.m. until Christmas morning. Specific time to be agreed so that the defendant and child can attend church services on Christmas morning.
d. Father's Day to father, Mother's Day to mother.
e. Defendant shall have Easter each year.
f. On a three week rotation:
 (i) week 1: Friday at 5:00 p.m. to Sunday at 12:30 p.m.
 (ii) week 2: Friday at 5:00 p.m. to Sunday at 6:00 p.m.
(iii) week 3: Weekend with defendant, mother. CT Page 16942
 g. Each parent shall be entitled to two (2) non-consecutive weeks vacation with the child upon 30 day advance notice to the other, unless mutually agreed otherwise. It is contemplated that said vacation may incorporate the child's school vacation and/or summer vacation.
 h. Plaintiff shall be entitled to additional visitation as mutually agreed.
 i. The Monday following defendant mother's full weekend of access, the plaintiff father shall have visitation from 4:00 p.m. to 7:30 p.m.
3. The parties shall equally the cost and expenses associated with the minor child's private primary and secondary education should they agree as to the desirability of private education.
4. The plaintiff shall pay the defendant the sum of $156.00 weekly as child support by way of an immediate wage withholding order, the aforementioned sum being in conformity with the child support guidelines.
5. The parties shall alternate claiming the minor child as a dependency exemption with the plaintiff entitled to the first such year.
6. The plaintiff and defendant shall provide health insurance for the minor child as reasonably available through their respective place of employment.
7. The plaintiff and defendant shall pay one-half of any uncovered, unreimbursed medical, dental, ophthalmological, orthopedic, orthodontic, pharmaceutical, psychological and the like expenses incurred for the minor child that after the defendant pays the first $100.00 of such expenses in any one calendar year.
8. Connecticut General Statutes § 46b-84(e) shall apply.
9. The plaintiff and defendant shall maintain their CT Page 16943 current life insurance policies, at their own expense, maintaining the child as sole, irrevocable beneficiary until he reaches the age of eighteen (18) years unless the child has not completed twelfth grade in which case the obligation will cease when the child attains the age of nineteen. Further, each party shall name the other as trustee of said life insurance and each party shall execute and deliver to the other an authorization permitting he/she to verify said coverage and designations. Neither party shall encumber or cause a reduction in coverage of said policies in any way.
10. No alimony is awarded to either party.
11. The parties have divided to their mutual satisfaction their personal property and furnishings.
12. a. The plaintiff shall quit claim all his right, title and interest in and to the marital residence located at 3 High Ridge Drive, Pawcatuck, CT to the defendant who shall pay and hold the plaintiff harmless from the mortgages, taxes and insurance thereon.
 b. In consideration of the above transfer, the defendant shall execute and deliver to the plaintiff a mortgage deed and promissory note in the amount of $100,000.00 on said residence payable to the plaintiff on or before September 1, 2002.
13. Each party shall be responsible for and hold the other harmless from the debt shown on their respective financial affidavit.
14. The plaintiff shall retain exclusive use and title to the 2001 Chevy Blazer free and clear of any claim of the defendant. The defendant shall retain exclusive use of and title to the 2000 Ford Explorer, free and clear of any claim by the plaintiff. Each party shall be solely responsible for all costs and liabilities in connection with the acquisition, use and maintenance of their respective vehicles and to secure insurance in their name only for their respective vehicles. Each party agrees to CT Page 16944 execute all documents necessary for the transfer of the aforementioned rights in said automobiles.
15. The defendant's maiden name of Gallo shall be restored to her.
16. The plaintiff and the defendant waive, release and relinquish all of their rights, interest and claims in and to each other's pension and retirement accounts.
Dubay, J.